ARRAS et al. v. RICHARDSON.

(City Court of New York, General Term. May 31, 1889.)

1. LEASE—FOR ILLEGAL PURPOSES—KNOWLEDGE OF LANDLORD.

In a suit against a surety on a written lease, defendant offered to show that the premises were hired to be used for illegal and immoral purposes, and that the agent of the landlord knew of it. Held that, as the lease showed nothing from which an illegal purpose could be implied, the evidence was properly refused, the fact that the agent knew of the purpose being immaterial, unless brought to the knowledge of the landlord, in this case, where the act of such leasing would be criminal, under Pen. Code N. Y. § 322.

2. SAME—SURRENDER—EVIDENCE.

A surrender of leased premises is not shown by evidence that the keys were not returned to the landlord, but to an employé in the agent's office, who had no authority to receive them.

Appeal from trial term.

Suit by Philipina Arras and others, executors of John Arras, deceased, against George H. Richardson, as surety on a lease. From a judgment entered on a verdict directed in favor of plaintiffs, defendant appeals.

Argued before McADAM, C. J., and NEHRBAS and HOLME, JJ.

Howe & Hummel, for appellant. John Hardy, for respondents.

PER CURIAM. The action is against the defendant as surety on a lease executed by John Arras, in his life-time, to Hall & Christie. The lease is in writing, under seal, and the agreement of the defendant is also in writing, under seal. The premises demised consisted of Nos. 112 and 114 West Thirty-Third street, in the city of New York, which were, prior thereto, occupied by Station E of the New York post-office. The defense is that the premises were let to be occupied for illegal and immoral purposes, to-wit, for the purpose of selling liquors therein without a license, and of giving concerts without a license, and for the further purpose of keeping and maintaining the premises as a place of assignation or ill fame. The lease does not disclose the purpose for which the premises were to be used, and the plaintiff had the right to assume, in the absence of knowledge to the contrary, that the hiring was for some lawful occupation. The defendant undertook to prove upon the trial that the agent who let the premises for the plaintiff knew of the illegal purpose of the hiring, but the evidence was ruled out under exception. This ruling was correct. Hall & Christie both testified that they had never seen or conversed with Mr. Arras, the landlord, and there was no claim that he had any knowledge of any illegal purpose in the hiring. In many cases, notice to the agent is regarded as notice to the principal; but, in order to charge the principal, in this instance, with an act that is criminal, (Pen. Code, § 322,) the defendant is bound to prove that the principal had personal knowledge of the facts. In other words, if a landlord employs an agent to find a tenant, and one is found, to whom the landlord executed a lease in writing, for a lawful purpose, the mere fact that the tenant had previously told the agent he intended to make an unlawful use of the property cannot defeat the lease made, unless the landlord had knowledge of, or was privy in some way to, the wrong. There must be scienter on the part of the lessor. In this case, the tenant was procured by the agent, but the terms of the demise were reduced to writing, and the letting consummated by the execution of the lease by the parties themselves; and in this there is nothing from which an unlawful use or purpose can be implied. In O'Brien v. Brietenbach, 1 Hilt. 304, which was an action by a lessee for

damages for refusing to give possession of the premises, the court held it was no defense that the defendant hired the premises intending to keep a bawdy-house therein; and that the mere avowal of the lessee of an intent to employ the leased property in an unlawful business did not constitute an offense, nor did it entitle the lessor to repudiate his contract.    There was no proof offered showing that the property was used for any illegal or immoral purpose, and the mere avowal to the agent of such intended use cannot make a contract, otherwise valid, illegal.    If the defendant had proven an illegal intent carried into execution, together with *scienter* on the part of the landlord, he might have succeeded on his plea; but, as he offered no such evidence, he has failed to establish any defense.    Contracts tainted with immorality or illegality will not be enforced in a court of justice; but the immoral and illegal feature of this hiring seems to have been known only to the tenants or their surety, the defendant.    The fact that they confided their scheme to the agent, and with-held it from the plaintiff, should not impair the contract which he made direct-ly with the tenants and their surety.    If the demise had been made orally, and had been consummated by the agent, his knowledge, perhaps, might have been imputed to the landlord by constructive notice or implication, for, by suing on the agent's contract, the landlord would have to adopt it in its entirety, the bad with the good.    But that is not this case.    The agent merely found per-sons willing to hire, and the landlord consummated the hiring himself; and having had his agreement reduced to writing, and the leasing being free from any taint of illegality, and he having no knowledge of any intended wrong, he cannot be charged with the consequences of any.    The contract made is free from any taint of illegality.    In regard to the licenses for the concert and liquor business, these might have been obtained by the lessees, if they were of good character, by dividing the two buildings, and running a separate business in each.    They required the premises before they could properly apply for the re-quired licenses, and they needed the lease before they could get the premises. The immoral feature of the hiring is the one we regard as most important, and we have directed our attention chiefly to that.  Upon the entire record, we think the rulings made below, aside from the reasons assigned for making them, were proper, and that no legal error was committed to the prejudice of the defendant.    The defense of surrender was entirely unproved.    The keys were never returned to the landlord, but to an employé in the agent's office, who had no authority, implied or otherwise, to accept them.    For these rea-sons, the judgment appealed from must be affirmed, with costs.    All concur.