### OBENDORFER v. MECHAM.

(Supreme Court, Appellate Term. May 15, 1908.)

1. LANDLORD AND TENANT—TERMINATION OF TENANCY—SURRENDER.

At the request of a tenant, who was not occupying the premises, the landlord obtained a subtenant for the apartment, and notified the tenant that she could subrent it and store the tenant's furniture in the basement. The tenant's wife replied that she would relinquish the lease if the landlord would have the furniture packed and stored in a certain warehouse at the landlord's expense. The offer was declined, and the tenant notified that he would be held responsible for the rent under the lease. Subsequently a friend of the tenant took charge of the apartment, with instructions to remove the furniture. When she vacated the apartment, she either left the keys with the janitor or left them in the hall; the evidence being in conflict on that point. The janitor was not authorized to accept the keys of the apartment, nor a surrender of the lease. *Held*, that there was no surrender of the premises.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Landlord and Tenant, §§ 350–354.]

2. SAME—ACTION FOR RENT—DEFENSES—NONDELIVERY OF LEASE.

Where a tenant was in possession of premises at the time a lease of them was signed by the parties, and made no request to be furnished with a copy, but admitted its execution by offering to relinquish his rights under it on certain conditions, he cannot resist the collection of rent on the ground that the lease was never delivered.

Appeal from Municipal Court, Borough of Manhattan, Fifth District.

Action by Leopoldine Obendorfer against George B. Mecham. From a judgment granting inadequate relief, plaintiff appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and GIEGERICH and GREENBAUM, JJ.

H. W. Helfer, for appellant.
Walter H. Thatcher, for respondent.

GIEGERICH, J. The action is to recover rent of an apartment in the house known as "The Esling," being Nos. 225 and 226 Riverside Drive, in the borough of Manhattan, under a written lease dated August 14, 1906, for one year from October 1, 1906, at a yearly rent of $1,300, or $108.34 monthly, payable monthly in advance. It is undisputed that there remains unpaid on the rent due upon June 1, 1907, a balance of $99.99, and that the plaintiff also failed to pay rent due for July, August, and September, making a total of $424.98 and interest. The defense was (1) that the lease, although signed by the parties litigant, had never been delivered to the defendant, and (2) a

surrender of the premises. The justice rendered judgment in favor of the plaintiff for only $101.32 damages, being the balance of the June rent, plus interest, and $19.41 costs and allowance, amounting in all to the sum of $120.73, from which the plaintiff has appealed to this court.

After reading the record, I am satisfied that the judgment is contrary to the evidence. The facts in the case necessary to be stated are as follows: The defendant lived in the apartment from about October 1, 1905, to about June 3, 1907. The plaintiff purchased the premises on May 19, 1906. Some time in August or September, 1906, the defendant signed the lease in suit and a copy thereof in Chicago, and sent both to his wife in the city of New York, who delivered them to the plaintiff, who testified that she sent one to the defendant at the apartment by her janitor; the defendant being in possession thereof at the time. The defendant sublet his apartment furnished to a Mr. Gelder, with the consent of the plaintiff and upon the understanding that the defendant would be responsible for the rent; and Mr. Gelder occupied the premises from about October 10, 1906, to May 26, 1907, and at the defendant's request the plaintiff collected the monthly rent of $150, and remitted to him each month the difference between such rent and the stipulated rent under the lease in suit viz., $41.67. On April 5, 1907, the defendant's wife wrote the plaintiff that the defendant would like to sublet his apartment from May 25th, when Mr. Gelder's lease expired, to about September 15th. The plaintiff thereupon had an interview with Mr. Gelder, in the course of which she told him that the defendant wanted to rent the apartment, and that she had a tenant for the same if Mr. Gelder would release the defendant. On April 16, 1907, the plaintiff wrote to the defendant, saying that she had a party willing to take the apartment unfurnished, and that this would be a good opportunity for the defendant "to save you the expense of having the apartment idle on your hands for the summer." On the 23d of April the plaintiff wrote to the defendant's wife that she had a party who would lease the apartment from May 1st, and that Mr. Gelder was willing to vacate on that day, and that she could store the defendant's furniture in the basement. Two days thereafter Mrs. Mecham telegraphed and wrote to the plaintiff that she would "relinquish lease" on May 1st provided the latter would have her furniture well packed and transferred to the Manhattan Storage Company at her (plaintiff's) expense. On April 27th the plaintiff wrote to the defendant declining such offer, and inclosed a statement showing that $99.99 would be due her on June 1st. Mr. Gelder vacated the premises on May 26th, and a Miss Fetters, a friend of the defendant, took charge of the apartment and told the plaintiff that she had instructions from Mrs. Mecham to tell her "that they were going to give up the apartment and move out." On June 3d Mrs. Mecham telegraphed to Miss Fetters to put all trunks in storage and the latter thereafter moved out.

The record fails to disclose any assent on the part of the plaintiff to the defendant's removal from the apartment. The plaintiff does not claim that she said anything in response to Miss Fetter's above-

noted message regarding the defendant's intention to give up the apartment. That she did not acquiesce in the removal will clearly appear from the following excerpt from her letter to the defendant of June 8th, viz.:

"Miss Fetters informed me last week that she had received instructions from Mrs. Mecham to remove all your furniture to storage. On Tuesday she vacated the apartment and everything was moved out. She also informed me that you intended to write to me. Up till now I have not received any word from you to explain your strange behavior. My object in writing you this letter is to ask you to give me permission to enter the apartment, to clean up and make it look more attractive, as there may be a chance to rent it before the expiration of your lease, which you would derive the benefit of. Of course, you understand that I hold you responsible for the balance of the rent due to me."

The defendant, in support of his contention that there was a surrender, claims that the keys were delivered to the janitor of the building by Miss Fetters. The janitor testified that the keys were not delivered to him personally, that he was temporarily absent from the building while Miss Fetters was taking her departure therefrom, and that when he returned he found the keys upon the switchboard in the hall. The evidence adduced in the plaintiff's behalf shows that she never authorized the janitor to accept the key or keys of the apartment in question, nor authorized anybody to accept a surrender of the lease. There was no proof offered on the part of the defendant showing that the janitor had such authority; the only evidence upon the point being that of the plaintiff, which, as above shown, was to the contrary. Under these circumstances, even though credence were given to Miss Fetter's testimony that she delivered the keys to the janitor, there was no surrender of the premises. Johnson v. Doll, 11 Misc. Rep. 345, 32 N. Y. Supp. 132; Arras v. Richardson (City Ct. N. Y.) 5 N. Y. Supp. 755.

The defendant urges that the lease, although signed by the respective parties, was not delivered, and it had, therefore, no efficacy. The plaintiff testified that she gave a counterpart of the lease to the janitor for delivery, and the defendant and his wife, on the other hand, gave testimony to the effect that neither of them received the same. The record is silent as to any request on the part of either of them to the plaintiff to furnish them with the lease. The defendant was in possession of the apartment when the lease was signed, and that he knew that it was in force is evidenced by the telegram and the letter of April 25, 1907, offering to relinquish the lease on certain conditions, which offer, as seen, the plaintiff refused to accept. The case should, therefore, be treated on the theory that the lease had become operative. David Stevenson Brewing Co. v. Culbertson, 18 Misc. Rep. 486, 41 N. Y. Supp. 1039. In the case just cited the court said:

"If the landlord had sued for rent upon a lease under which the tenant had declined to enter into possession, delivery might have been material, as bearing upon the question whether the lease became operative or not, and the landlord might have been obliged to prove it. Witthaus v. Starin, 12 Daly, 226. But that is not this case. This was a proceeding to require the tenant either to pay the rent or surrender the possession she was enjoying under the lease in question."

The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

GILDERSLEEVE, P. J., concurs.

GREENBAUM, J. (concurring).    The fact that defendant went into possession after the execution of the duplicate leases, the correspondence that passed between the parties, and their acts all unmistakably evidence an acceptance of the lease.    As to the alleged surrender and acceptance, the testimony falls short of proof of this defense.    Dagett v. Champney, 122 App. Div. 254, 106 N. Y. Supp. 892.

The judgment should be reversed.